

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3846 | **DATE** | 9/14/2001 |
| **CASE TITLE** | DARRYL CLEMONS vs. DONALD SNYDER | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Clemons' section 2254 petition is denied and this case is dismissed.
(11) ■ [For further detail see

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 18 2001 | |
| ✓ | Docketing to mail notices. | | date docketed | 15 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 SEP 17 PM 2:00 | | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DARRYL CLEMONS, )
)
Petitioner, )
)
v. ) No. 01 C 3846
) Paul E. Plunkett, Senior Judge
DONALD SNYDER, )
)
Respondent. )

DOCKETED

SEP 1 8 2001

## MEMORANDUM OPINION AND ORDER

Darryl Clemons has filed a petition pursuant to 28 U.S.C. § 2254 ("section 2254") to set aside his conviction and sentence.[1] For the reasons set forth below, the petition is denied and this case is dismissed.

### Procedural Background

In 1993, Clemons was found guilty of first-degree murder on the theory of accountability, armed robbery, aggravated kidnapping and arson and sentenced to sixty years in prison. (Gov't Ex. D, People v. Clemons, No. 1-94-1850, slip op. at 1-2 (Ill. App. Ct. June 28, 1996).) The Illinois Appellate Court affirmed Clemons' conviction and sentence on June 28, 1996. (Id. at 2.)

---

[1]Clemons also attached a motion for appointment of counsel to the end of his reply brief. Because he did not submit this motion until his section 2254 petition was fully briefed, the motion is denied.

Clemons then filed a petition for leave to appeal to the Illinois Supreme Court. That court denied Clemons' petition on December 4, 1996. (Gov't Ex. G, People v. Clemons, No. 82061 (Ill. Sup. Ct. Dec. 4, 1996) (order denying petition for leave to appeal).)

After the proceedings on his direct appeal were complete, Clemons filed a petition for post-conviction relief. That petition was denied on October 28, 1997. (Gov't Ex. H, People v. Clemons, P.C. 91 26722, slip. op. at 6 (Ill. Cir. Ct. Oct. 28, 1997).) The denial of Clemons' petition for post-conviction relief was affirmed on November 22, 1999. (Gov't Ex. L, People v. Clemons, No. 1-97-4529, slip op. at 2 (Ill. App. Ct. Nov. 22, 1999).)

Clemons filed a petition with the Illinois Supreme Court for leave to appeal that order. The supreme court denied his petition on May 31, 2000. (Gov't Ex. N, People v. Clemons, No. 89259 (Ill. Sup. Ct. May 31, 2000) (order denying petition for leave to appeal.)

## Discussion

In his section 2254 petition, Clemons raises fifteen separate claims[2]:

No. 1: The trial court violated his Sixth and Fourteenth Amendment rights by permitting his co-defendant to assert his Fifth Amendment privilege through his lawyer;

No. 2a: His lawyer was constitutionally ineffective because she promised in opening argument to produce an eyewitness who would testify that Clemons was innocent, but no such witness was produced;

No. 2b: His lawyer was constitutionally ineffective because she failed to present evidence at the hearing on the motion to quash Clemons' arrest and to suppress the statements he made to the police;

---

[2]Clemons actually lists seventeen claims in his petition, but claim 7a(1) is identical to claim 2a and claim 7b is identical to claim 2b. Therefore, claims 7a(1) and 7b are not included in this list.

-2-

No. 3a: His due process rights were violated when the trial court denied his motion to substitute judges;

No. 3b(1): His due process rights were violated when the trial court allowed the prosecutor to argue that a nurse determined the burns Clemons sustained were not caused by a grease fire because there was no evidence to support that statement;

No. 3b(2)(A): His due process rights were violated when the trial court allowed the prosecutor to argue that the home monitoring system was not working on the night of the crimes because there was no evidence to support that statement;

No. 3b(2)(B): His due process rights were violated when the trial court allowed the prosecutor to argue in rebuttal that the defense would have introduced records to show that home monitoring was working on the night of the crimes, if in fact it had been;

No. 3b(3): His due process rights were violated by the trial court's decision to allow any evidence of home monitoring because such evidence was far more prejudicial than probative;

No. 4: His Fifth Amendment rights were violated by the trial court's denial of his motion to suppress the statements he made to the police;

No. 5: His due process rights were violated by the trial court's refusal to hold a pre-trial hearing on the propriety of the death penalty;

No. 6: His due process rights were violated by the trial court's imposition of a sixty-year sentence;

No. 7a(2): His right to effective assistance of counsel was violated by his lawyer's failure to tell the trial court that she had received a letter from Clemons' co-defendant in which he offered to testify for Clemons;

No. 7c: His right to effective assistance of counsel was violated by his lawyer's failure to investigate mitigating circumstances and call mitigation witnesses at his sentencing hearing;

No. 7d: His right to effective assistance of counsel was violated by his lawyer's failure to consult with him in preparation for the trial and sentencing hearing; and

No. 7e: His right to effective assistance of counsel was violated by her thirty-day hiatus from his case between his trial and sentencing due to her suspension from the Public Defender's Office.

We can reach the merits of these claims only if Clemons "raised all of [them] during the course of the state proceedings, presenting each claim fully and fairly to the state court." Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999). "A petitioner presents his claims fully by pursuing all available avenues of relief provided by the state before turning to the federal courts." Id. (internal quotation marks and citation omitted). If a petitioner does not raise his claims in a petition for a discretionary appeal to the state supreme court, he cannot satisfy this requirement. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).³ Though Clemons raised claims 2b, 3a, 4, 5 and 6 in his direct appeal, he failed to include them in his petition for leave to appeal to the Illinois Supreme Court. Because he did not fully present these claims to the state court for resolution, they are procedurally defaulted. Rodriguez, 193 F.3d at 917.

Despite the default, we can still reach the merits of these claims if Clemons can show cause for having failed to raise them on appeal and prejudice resulting from that failure or that our refusal to review them would result in a "fundamental miscarriage of justice." Id. (internal quotation marks and citation omitted). Clemons can take refuge in neither exception.

The cause for his failure to raise these claims before the supreme court, Clemons says, is ineffective assistance of counsel. Clemons' counsel was constitutionally ineffective if her performance (1) fell below an objective standard of reasonableness and (2) prejudiced him in the proceedings. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). With respect to the performance element, "there is a strong presumption that any decisions by counsel fall within a wide

---

³Clemons argues that Boerckel should not apply to him because his petition for leave to appeal was filed before that case was decided. As our court of appeals has noted, however, the Boerckel decision applies retroactively to cases on collateral review. Rittenhouse v. Battles, No. 00-3461, 2001 WL 965939, at *7 (7th Cir. Aug. 27, 2001).

-4-

range of reasonable . . . strategies." Valenzuela v. United States, No. 00-2167, 2001 WL 930217, at *3 (7th Cir. Aug. 17, 2001). Clemons has offered no evidence to rebut that presumption. We must presume, therefore, that his lawyer omitted those claims because she thought they were weak or otherwise lessened the likelihood that the supreme court would entertain Clemons' appeal, not because she was too lazy or incompetent to make a full presentation of his case. Because Clemons has not demonstrated that his lawyer was ineffective within the meaning of Strickland for failing to include these claims in his petition for leave to appeal to the Illinois Supreme Court, he has not shown cause for his procedural default.

Nor has he shown that our failure to review these defaulted claims would result in a fundamental miscarriage of justice. That exception applies only when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Rodriguez, 193 F.3d at 917 (internal quotation marks and citation omitted). The only evidence Clemons offers to prove his innocence is a letter allegedly written by his co-defendant, James Munson, which says:

> You know I've been doing a lot of thinking about this. What if you[r] lawyer can get me called on the stand to tell the truth about what happen[ed]. You know . . . as well as I know you didn't have anything to do with this case. I'll be willing to do that for you! I hope you know what I'm talking about!

(Pet'r's Reply, Ex. 1, 5/28/93 Letter to Darryl from James at 3.) There are two problems with this letter. First, it is not authenticated so there is no evidence that it was, in fact, written by Munson. Second, even if it were, the letter does not necessarily support Clemons' claim of innocence. Clemons was convicted of murder on the theory of accountability. (Gov't Ex. A, Br. Appellant at 2, People v. Clemons, No. 1-94-1850 (Ill. App. Ct. Oct. 2, 1994).) In other words, the jury found that he intentionally aided or abetted Munson in the murder, but did not actually pull the trigger himself. 720 ILL. COMP. STAT. 5/5-2. Given the context of Clemons' conviction, the meaning of

the statement "you didn't have anything to do with this case" is far from clear. It could be, as Clemons urges, an admission that he played no role at all in the crime. Equally plausible, however, is that it is an admission that Clemons did not fire the fatal shots, a scenario that is completely consistent with his conviction. In short, Clemons has not demonstrated that he is actually innocent of the crimes for which he was convicted. Thus, the fundamental miscarriage of justice exception does not excuse his procedural default.

After the proceedings on his appeal were completed, Clemons filed a petition for post-conviction review. Among the claims Clemons included in his petition were Nos. 7a(2), 7c, 7d and 7e, which he had not raised on appeal. Ordinarily, under Illinois law, the consequence of failing to raise available claims on appeal is forfeiture of post-conviction review. People v. Franklin, 167 Ill. 2d 1, 9, 656 N.E.2d 750, 753 (1995) (noting that a post-conviction proceeding "is limited to constitutional issues which have not been and could not have been presented on direct review"). The state court followed that rule with respect to claims 7a(2) and 7e, holding that Clemons had procedurally defaulted them. The court said that Clemons had waived claim 7e, pertaining to his counsel's suspension from the Public Defender's Office, because he failed to raise it on appeal. (Gov't Ex. L, People v. Clemons, No. 1-97-4529, slip op. at 6-7 (Ill. App. Ct. Nov. 22, 1999).) The court held that claim 7a(2), the ineffective assistance claim based on his lawyer's failure to tell the trial court that Munson had offered to testify for him, was barred by res judicata even though Clemons had not raised it on appeal. The operative facts underlying this claim, the court said, were identical to those underlying another ineffective assistance of counsel claim that had been decided against Clemons on appeal. According to the court, the adverse adjudication of the first ineffective assistance claim operated as a bar to the second. (Id. at 2-5.)

The doctrines of waiver and res judicata are adequate and independent state grounds for the appellate court's determination that Clemons procedurally defaulted claims 7e and 7a(2). Consequently, we are bound by the state court's determination and are precluded from reviewing the underlying federal claims, absent proof that his default should be excused. Williams v. Chrans, 894 F.2d 928, 934 (7th Cir. 1990) (noting that a federal court may not review constitutional claims that a state court has deemed defaulted unless petitioner shows cause and prejudice for the default or that absence of review will result in a fundamental miscarriage of justice). Clemons has offered no proof that either exception applies. We cannot, therefore, review the merits of claims 7a(2) and 7e.[4]

Clemons also did not raise on appeal claims 7c and 7d, the ineffective assistance claims based on counsel's failure to call mitigating witnesses at the sentencing hearing and to consult with Clemons throughout the proceedings, though they were apparently available to him at the time. The state court, however, chose to ignore Clemons' apparent forfeiture of these claims and reviewed them on the merits. Because the state court did not enforce its procedural default rules against Clemons on these claims, we are not required to do so either. Cawley v. DeTella, 71 F.3d 691, 695 n.6 (7th Cir. 1995).

In all, then, there are eight claims for merits review: 1, 2a, 3b(1), 3b(2)(A), 3b(2)(B), 3b(3), 7c and 7d. Our review of these claims is controlled by section 2254, which provides:

---

[4] Clemons also raised claim 2b, that his lawyer was ineffective for failing to make an offer of proof at the hearing to quash his arrest, in his post-conviction petition. As noted above, this claim is procedurally defaulted as a matter of federal law because Clemons failed to include it in his petition for leave to appeal to the Illinois Supreme Court. In its review of Clemons' post-conviction proceedings, the appellate court held that this claim was defaulted as a matter of state law as well on the grounds of res judicata. Thus, even if Clemons had presented this claim in his petition for leave to appeal to the supreme court, the appellate court's subsequent ruling that the claim was defaulted would still bar habeas review.

-7-

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

The "contrary to" clause of section 2254(d)(1) applies solely to questions of law. Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). It requires federal courts "to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law 'as determined by the Supreme Court of the United States' that prevails." Id. The "unreasonable application" clause of section 2254(d)(1) applies to mixed questions of law and fact. Id. at 870. It "restricts the grant of collateral relief to cases in which the state's decision reflects 'an unreasonable application of' the law" to the facts. Id. Thus, when the issue is a "matter of degree, rather than of concrete entitlements, . . . . a responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment." Id. at 871.

Clemons' first claim is that the trial court violated his constitutional right to compulsory process when it permitted his co-defendant, Munson, to assert his Fifth Amendment privilege against self-incrimination through his lawyer rather than requiring him to assert it personally. It is not clear where this issue falls on the fact-to-law spectrum. Ultimately, however, it does not matter because the state court's decision passes muster under any standard.

-8-

The appellate court analyzed the issue by saying:

> "The compulsory process clause is not violated unless a defendant is able to show how the missing testimony would have been both material and favorable to his defense." Fryer, 247 Ill. App. 3d at 1064 citing United States v. Valenzuela-Bernal, 458 U.S. 858, 73 L. Ed. 2d 1193, 102 S. Ct. 3440. In this case there is quite simply no indication of what Munson's testimony would have been had he testified and, therefore, it cannot be said that his testimony would have been favorable to defendant. Moreover, defendant made no offer of proof as to this proffered evidence and, therefore, cannot assign error on appeal to the trial court's action.

(Gov't Ex. D, People v. Clemons, No. 1-94-1850, slip. op. at 2 (Ill. App. Ct. June 28, 1996).)

If the court's determination that Clemons was not deprived of the right to compulsory process is a purely factual issue, our analysis is over. Under section 2254(e)(1), the state court's factual findings are presumed to be correct unless rebutted by the petitioner with "clear and convincing evidence." Because Clemons did not rebut this presumption, the state court's judgment must stand.

Clemons does not fare any better if the issue is one of law or a mixed question of fact and law. Issues of law are subject to de novo review. 28 U.S.C. § 2254(d)(1); Lindh, 96 F.3d at 869. Mixed questions will be overturned only if they are resolved unreasonably. Id. at 870. In either case, the state court's conclusion, that Clemons' right to compulsory process was not violated, will not be disturbed unless it is wholly inconsistent with Supreme Court case law. It is not. According to the Supreme Court, a defendant's right to compulsory process is violated only if the testimony of the absent witness would have been "both material and favorable to the defense." United States v. Valenzuela-Bernal, 458 U.S. 858, 873 (1982). The state appellate court cited that standard and, because Clemons had made no showing either at trial or in his appellate brief that Munson's testimony would have been material and favorable to his defense, concluded that his right to compulsory process had not been violated. Because the state court correctly identified the governing

legal standard and reasonably applied it to the facts of this case, its conclusion that Clemons' right to compulsory process was not violated provides no basis for habeas relief.

Clemons' next claim is that his right to effective assistance of counsel was violated by the unfulfilled promise his lawyer made in opening argument to produce an eyewitness who would testify to Clemons' innocence. Whether a defendant's right to counsel has been violated is a mixed question of law and fact. Strickland, 466 U.S. at 698. Thus, we must determine whether the state court's conclusion that Clemons' right to counsel was not violated constituted an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1).

The state court started its analysis of this claim with Strickland, which sets forth the Supreme Court's standard for determining whether a defendant was denied effective assistance of counsel. In the words of the court:

> Strickland advances a two-component standard. The first component is to prove that counsel's representation fell below an objective standard of reasonableness such that the trial results were unreliable. Under the second component, the defendant must prove that he was prejudiced by the unprofessional conduct; that is, he must show, but for the attorney's unprofessional errors, the results of the trial would have been different.

(Gov't Ex. D, People v. Clemons, No. 1-94-1850, slip. op. at 3 (Ill. App. Ct. June 28, 1996) (internal quotation marks and citations omitted).) The court concluded that Clemons did not satisfy the first part of this test because "the record reveals that the complained-of comments by defense counsel have been taken out of context and that, if anything, trial counsel employed reasonable trial stratagem given her client's statement that he committed the crime with which he was charged." (Id. at 4.)

Though the court's ultimate conclusion about the effectiveness of Clemons' counsel is a mixed question of law and fact, its determinations that (1) Clemons took his lawyer's statements out

-10-

of context and (2) those comments were part of a reasonable trial strategy, are findings of fact to which the presumption of correctness applies. 28 U.S.C. § 2254(e)(1). Clemons has made no attempt to rebut that presumption. Accordingly, this ineffective assistance claim fails.

Clemons' claim 7c is also an ineffective assistance claim. In it, Clemons argues that his counsel was ineffective for failing to investigate mitigating circumstances and failing to call available mitigation witnesses during his sentencing hearing. The state appellate court said the following about this claim:

> While defendant maintains he was prejudiced by counsel's failure to investigate and call mitigation witnesses, the only evidence offered in support of this allegation is defendant's own affidavit stating that he knew of three witnesses who might have testified that he was a model prisoner and of good character. As previously set forth, to support a claim that counsel failed to investigate and call witnesses, a defendant must tender an affidavit from the individual who would have testified at trial. . . . By failing to provide appropriate affidavits to support this allegation, defendant failed to meet his burden for post-conviction relief. Moreover, in view of the brutality of the crime at issue and the evidence shown in aggravation, we fail to see how the omission of this testimony so prejudiced defendant that the outcome of sentencing would have been different had the testimony been presented.

(Gov't Ex. L, People v. Clemons, No. 1-97-4529, slip op. at 7-8 (Ill. App. Ct. Nov. 22, 1999).) Though the court did not set forth the Strickland standard in this section of its opinion, it clearly applied that test to this claim. The court concluded, because Clemons had offered no evidence about what the mitigation witnesses' testimony would have been, that Clemons' counsel had not acted unreasonably in failing to investigate and call those witnesses. It also concluded, based on its review of the record, that the brutality of the crimes with which Clemons was charged and the strength of the aggravation evidence against him vitiated any prejudice that his lawyer's conduct may have caused. Clemons has not rebutted the presumption of correctness that applies to the facts underlying the court's application of Strickland, i.e., that there was no evidence about the mitigation witnesses'

-11-

testimony but ample aggravation evidence against Clemons. Given the presumed accuracy of those facts, the state court's conclusion that Clemons' lawyer was not constitutionally ineffective for failing to call mitigation witnesses is a wholly reasonable one.

In Clemons' last ineffective assistance claim, 7d, he argues that his counsel was constitutionally inadequate because she failed to consult with him in preparation for his trial and sentencing hearing. The state appellate court "[found] th[at] argument to be without merit." (Id. at 8.) It said:

> Defendant maintains if counsel had adequately consulted with him, an alibi defense could have been introduced showing that defendant was affixed with a home monitoring bracelet on the date in question, and was home at the time of the offenses. The record reveals this line of defense would have been untenable in view of defendant's own admission that on the day of the offenses, he purposefully waited at home until he received a call from the home monitor before leaving from his residence with Munson. Defendant's other conclusory allegations that he was prejudiced by counsel's failure to consult with him similarly fail to identify with any factual specificity what prejudice actually resulted.

(Id.) Once again, the court's conclusion is a reasonable application of the Strickland standard to the presumptively correct facts found by the court.

Clemons' last contention is that a number of the trial court's evidentiary rulings violated his due process rights. Specifically, he claims that the court should have stricken as unsupported those portions of the prosecutor's closing argument in which he said that (1) Clemons had been examined by a nurse who determined that the burn on his hand was not from a grease fire and (2) home monitoring of Clemons was not working on the night of the murder. Clemons also argues that the trial court erred by allowing any evidence of home monitoring because such evidence was far more prejudicial than probative. Finally, he claims that the trial court impermissibly allowed the prosecution to shift its burden of proof to Clemons when it allowed the prosecutor to argue in his

rebuttal closing that the defense would have introduced records that showed home monitoring was working if, in fact, it had been on the night of the murder.

The state court found no merit in Clemons' claims of prosecutorial misconduct. Under Illinois law, the court said, prosecutorial remarks are grounds for reversal only if they cause "'substantial prejudice to the accused, such that absent those remarks the verdict would have been different.'" (Gov't Ex. D, People v. Clemons, No. 1-94-1850, slip op. at 5 (Ill. App. Ct. June 28, 1996) (quoting People v. Cisewski, 188 Ill. 2d 163, 175-76 (1987)).) Because the state court "fail[ed] to perceive how any of the [contested] remarks . . . resulted in any significant prejudice" to Clemons, it denied his claim. (Id.)

The court was also not persuaded that the admission of evidence about home monitoring was erroneous. Reasoning that it was "other crimes" evidence, the court said such evidence is admissible under Illinois law:

> if it is relevant for any purpose other than to demonstrate a defendant's character or propensity to commit crime. Thus, other crimes evidence is admissible to prove, among other things, modus operandi, motive, knowledge, intent, absence of mistake or accident, defendant's state of mind, absence of an innocent mind frame or the presence of criminal intent, circumstances or context of defendant's arrest, placement of defendant in proximity to the time and place of the crime, identification of the weapon used in a crime, consciousness of guilt, to show a common design, scheme or plan, circumstances of a crime charged that would otherwise be unclear, whether a crime charged was actually committed, opportunity or preparation, a defendant's dislike or attitude toward the victim, to explain an otherwise implausible fact relating to the crime charged, to contradict on rebuttal a defendant's denials, to disprove a defense of entrapment and to disprove an alibi defense.

(Id. at 6 (internal quotation marks and citation omitted).) The court held that the evidence was admissible for the "permissible purpose of corroborating matters contained in defendant's post-arrest statement" that Clemons disputed. (Id. at 7.)

As the state court's opinion demonstrates, the trial court's rulings on evidentiary matters are grounded in state law. Section 2254 is not, however, a vehicle to correct errors of state law. Koo v. McBride, 124 F.3d 869, 874 (7th Cir. 1997). Rather, Clemons is entitled to relief only if the state court deprived him of a "constitutionally protected right." Id. Clemons claims that these evidentiary errors violated his right to due process. To succeed on this claim, Clemons must show that "the probative value of the state's evidence was so greatly outweighed by its prejudice . . . that its admission denied him a fundamentally fair trial." Milone v. Camp, 22 F.3d 693, 702 (7th Cir. 1994).

Clemons has not made the requisite showing. Clemons, as the state court noted, made a statement to the police confessing to the crimes with which he was charged. (Gov't Ex. D, People v. Clemons, No. 1-94-1850, slip op. at 4 (Ill. App. Ct. June 28, 1996).) Under those circumstances, we do not believe that the statements and evidence to which Clemons objects were so prejudicial that they denied him a fundamentally fair trial. The state court's evidentiary rulings, therefore, provide no basis for habeas relief.

## Conclusion

For the reasons set forth above, Clemons' section 2254 petition is denied and this case is dismissed.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: 9-14-01